**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **HOWARD MILLER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **No. CIV-07-272-D** |
| | ) | |
| **BRAD HENRY, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2241 seeking a writ of habeas corpus based on a challenge to the execution of his sentence. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). In accordance with Rule 4, Rules Governing Section 2254 Cases, the petition has been examined upon filing.[1] For the reasons set forth below, it is recommended that the petition be denied.[2]

Background/Petitioner's Claim

Petitioner alleges that in 1984 he was convicted of "sex related crimes and burglary" for which he was sentenced to three terms of fifteen years and one term of ten years in the

---

[1]Pursuant to Rule 1(b), Rules Governing Section 2254 Cases, these rules may be applied to habeas cases other than those brought under 28 U.S.C. § 2254 at the discretion of the court.

[2]Based on the information in the petition, the undersigned issued an order directing Petitioner to show cause why the action should not be dismissed as time-barred. Petitioner responded to that order. The undersigned has determined, however, that it is not clear from the face of the petition that the action is untimely, and dismissal pursuant to Rule 4 has been recommended for other reasons. *Kilgore v. Attorney General of Colo.*, 519 F.3d 1084, 1089-90 (10th Cir. 2008)(holding that where it was not clear from the face of the petition that the action was untimely, court's options following initial review were to grant the writ, order a response, or deny the petition for some other reason apparent from the face of the petition).

custody of the Oklahoma Department of Corrections ("DOC"), to be served consecutively. Petition at 1. Petitioner states that he is now serving his third fifteen-year term of incarceration and that he became eligible for parole on this sentence in 2003.[3] *Id.* Petitioner does not challenge any of his convictions or sentences.[4] Rather, Petitioner challenges the parole procedures applied to him under Okla. Stat. tit. 57, § 332.7 as amended in 1997 and 1998.

As his sole ground for habeas relief, Petitioner asserts that the application of these amendments to his current sentence has "resulted in a longer period of incarceration than under the earlier rules" and thus constitutes a violation of the Ex Post Facto Clause of the United States Constitution. According to Petitioner, under the Oklahoma law in place at the time of his convictions in 1984, the Pardon and Parole Board ("Board") "was required to base its recommendations for parole upon the conduct and record of the inmate during his confinement at his assigned penal institution." Petition at 1 (citing Okla. Stat. tit. 57, § 332.7 (1971)) (emphasis in the original). Petitioner contends that under this version of § 332.7, the practice was to hold a public hearing at which the inmate was given "the opportunity to be heard by members of the Board, as well as answer any questions that members of the Board might have regarding his conduct and record at his assigned institution." *Id.* at 2.

---

[3]Following the completion of his current sentence, Petitioner will begin serving his ten-year sentence for first degree burglary. *See* Oklahoma Department of Corrections, Offender Information, available at http://www.doc.state.ok.us/offenders (accessed April 28, 2008).

[4]According to the records of this Court, Petitioner has unsuccessfully challenged these convictions in habeas actions filed in this Court pursuant to 28 U.S.C. § 2254. Case Nos. CIV-89-458-R; CIV-00-90-T; and CIV-04-1332-T.

Petitioner alleges that when § 332.7 was amended in 1997, the Board began to base its parole recommendation on the conduct and record of the inmate "during his confinement in the custody of the Department of Corrections." *Id.* Petitioner alleges further that a second amendment to § 332.7 in 1998 prescribed a two-stage hearing procedure for inmates who were convicted of violent crimes. *Id.* According to Petitioner, during the first stage of this procedure, "no pro forma or public hearing is conducted and the decision whether to grant parole or not, is required to be based solely on a completed report 'submitted by the staff of the Board.'" Petition at 2 (emphasis in the original). If the Board denies parole at this first stage, no hearing is held and the inmate will not be considered again for three years. *Id.* (citing Okla. Stat. tit. 57, § 332(C)(1) (1998)).

Petitioner states that he unsuccessfully raised this ex post facto issue in a state habeas petition filed on October 12, 2006, in the District Court of Alfalfa County and on appeal to the Oklahoma Court of Criminal Appeals ("OCCA").[5] *Id.* at 2.

## DISCUSSION

[5]Although the petition herein indicates that the OCCA opinion is attached as an exhibit, it is not. The Alfalfa County District Court docket records do reflect, however, that Petitioner filed a state habeas petition on October 13, 2006, which was denied on December 8, 2006. *See* Oklahoma District Court Records, Alfalfa County, *In Re: Habeas Corpus of Miller, Howard*, Case No. WH-06-00004, docket available at: http://www.odcr.com (accessed April 28, 2008). Although the docket record does not reflect the specific nature of Petitioner's claims, according to Petitioner, he asserted that "as applied to his sentence, the said amendments increased his punishment . . . ." Petition at 2. On January 16, 2007, the OCCA entered an order denying the petition for habeas corpus. *See* the Oklahoma State Courts Network, OCCA, *Miller v. Alfalfa County Dist. Ct.*, Case No. MA-2006-1272, docket available at: http://www.oscn.net (accessed April 28, 2008).

I. Initial Screening of the Petition

Pursuant to Rule 4 of the Rules Governing Section 2254 Cases, the Court is under an obligation to review habeas petitions upon filing and to summarily dismiss a petition "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief . . . ." For the reasons set forth hereafter, the undersigned finds that it is clear from the face of the petition that Petitioner is not entitled to relief, and it is therefore recommended that the petition be denied.

Petitioner raises a single ground for habeas relief, alleging that the "implementation of the said amendments to Petitioner's third term constituted [a] violation of the Ex Post Facto clause as it resulted in a longer period of incarceration than under the earlier rules." Petition at 3. The Ex Post Facto Clause "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham*, 450 U.S. 24, 30 (1981). "Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." *Garner v. Jones*, 529 U.S. 244, 250 (2000). However, "there is no mechanical formula for determining whether a new law sufficiently increases punishment to be considered ex post facto; rather courts must determine on a case by case basis whether a change in law 'produces a sufficient risk' of greater punishment for covered crimes." *Raymer v. Enright*, 113 F.3d 172, 174 (10th Cir. 1997) (*quoting California Dep't of Corrections v. Morales,* 514 U.S. 499, 509 (1995)).[6] If

---

[6]In *Morales*, the Supreme Court found that a California statute which changed the frequency of reconsideration for parole from every year to up to every three years for prisoners convicted of more than one (continued...)

an amended parole law does not "by its own terms show a significant risk" of increasing punishment, the petitioner "must demonstrate, by evidence drawn from the [amended law's] practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." *Garner*, 529 U.S. at 255. An amendment that creates only "the most speculative and attenuated possibility" of increasing punishment is "insufficient under any threshold" to violate the Ex Post Facto Clause. *Morales*, 514 U.S. at 509. For the reasons discussed hereafter, the undersigned finds Petitioner has failed to show that the application of the statutory amendments created a significant risk of increasing his punishment.

1. Two-Stage Parole Consideration

Pursuant to Okla. Stat. tit. 57, § 332.7, as amended in 1998, parole consideration is conducted pursuant to a two-stage process. First, the Board reviews a report completed by its staff and conducts a vote to determine whether, based upon the report, the Board will consider the person for parole at a subsequent meeting of the Board. *See* Okla. Stat. tit. 37, § 332.7(C)(1). At the subsequent meeting, the Board "shall hear from any victim or victim's

---

[6](...continued)
homicide did not violate the ex post facto prohibition. The *Morales* Court identified three major factors shaping its conclusion. First, the amendment applied only to a class of prisoners (those convicted of more than one homicide) "for whom the likelihood of release on parole is quite remote." *Morales*, 514 U.S. at 511. Second, the amendment had no effect on the date of any prisoner's initial parole suitability hearing but affected "the timing only of subsequent hearings." *Id.* Finally, a default provision required an annual hearing, subject to the Board's discretion to "defer the next hearing up to two years more depending on the circumstances." *Id.* Given these factors, the Court concluded that the statutory amendment created "only the most speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes" and therefore did not violate the Ex Post Facto Clause. *Id.* at 514.

representative that want to contest the granting of parole" and then "conduct a vote regarding whether parole should be recommended for that person." *Id.*, § 332.7(C)(2).

Petitioner appears to base his ex post facto claim on the fact that under the amended parole procedure, at the first stage Petitioner is no longer allowed to appear personally and have an opportunity to be heard by the Board members; instead, the initial decision is now "based solely on a completed report 'submitted by the staff of the Board.'" Petition at 2. The petition may also be broadly construed to assert that under the amended procedure, the Board considers Petitioner's conduct and record during his entire DOC incarceration rather than just during his confinement at his current assigned facility.

Petitioner alleges that he was initially considered for parole on his present fifteen-year sentence in 2003 and then again in April 2006, and in both instances he was denied parole "based on the report of prepared by the staff of the Board." *Id.* However, Petitioner fails to offer any factual support for his conclusion that the Board's use of a staff report covering his conduct and record during his entire confinement and/or his inability to appear personally before the Board has resulted in "significant risk of a longer period of incarceration." *Henderson v. Scott*, 260 F.3d 1213, 1217 (10th Cir. 2001) (finding that in order to prevail on his ex post facto claim petitioner must show that the application of the amended statute to his case would result in a significant risk of a longer period of incarceration). Petitioner's lack of opportunity to appear before the Board – standing alone – suggests nothing more than "the most speculative and attenuated possibility" that his incarceration would be increased. *Morales*, 514 U.S. at 509. Likewise, Petitioner's statement that although he has served eight

years on his current sentence without any parole recommendation, "[t]he average amount of time a person serving a sentence for Petitioner's crime in 1984 completed before being paroled was two to four years[]" fails to support his conclusion that the amendments have increased his punishment. Petition at 3. Petitioner offers no explanation as to the source of this information. Moreover, to the extent he claims that in 1984 inmates serving a sentence for rape by instrumentation were, on average, paroled after serving two to four years, such claim, even if true, is generally irrelevant to Petitioner's case absent additional information such as the length of each inmate's original sentence, the record and conduct of the inmate during his incarceration, and other factors affecting the Board's parole decisions.[7] The undersigned therefore finds that Petitioner has failed to show that the implementation of a two-stage parole consideration review process violates the Ex Post Facto Clause.

2. Frequency of Parole Hearings

Liberally read, the petition may also challenge as an ex post facto violation the decreased frequency of his parole hearings. The relevant statute provides that a person who committed a violent crime[8] before July 1, 1998, and has been denied parole, is eligible for reconsideration at least once every three years. Okla. Stat. tit. 57, § 332.7(D) (Supp. 1998).[9]

[7]According to the offender information offered by the official DOC website, prior to the amendments about which he complains, Petitioner served over ten years of his initial fifteen year sentence from October of 1984 until March of 1995. *See* Oklahoma DOC, Offender Information, available at http://www.doc.state.ok.us/offenders (accessed April 29, 2008).

[8]Petitioner does not dispute that he was convicted of a violent crime within the meaning of the amended statute.

[9]The statute specifically reads:

(continued...)

Although Petitioner does not describe the frequency of parole hearings prior to the challenged amendments, the undersigned takes judicial notice that before the 1998 amendment, the parole statute provided that for those inmates whose crimes were committed prior to July 1, 1998, an inmate who had been considered for parole and denied could be reconsidered for parole after one year. *See* Okla. Stat. tit. 57, § 332.7(B)(1) (Supp. 1997).

To the extent Petitioner asserts a facial challenge to the three-year set off in the amended parole statute itself, an identical challenge has been rejected by the Tenth Circuit Court of Appeals. In rejecting the inmate's facial challenge in *Henderson v. Scott*, 260 F.3d 1213 (10th Cir. 2001), the Tenth Circuit found that Oklahoma's amended parole law (1) "does not change the length of the sentence in any way," (2) "does not affect the timing of the initial parole consideration, only of subsequent parole consideration dates," (3) "clearly reserves the [Parole] Board's discretion to reconsider parole before the three-year period has expired," and (4) that the Parole Board's policy manual "indicates that the [Parole] Board has the authority to defer reconsideration for up to five years, but that it can modify parole consideration dates if the [Parole] Board receives new information." *Id.* at 1216-1217. The

---

[9](...continued)

> Except as otherwise directed by the Pardon and Parole Board, any person who has been considered for parole and was denied parole or who has waived consideration shall not be reconsidered for parole:
>
> (1) Within three (3) years of the denial or waiver, if the person was convicted of a violent crime . . . and was eligible for consideration pursuant to paragraph 1 of subsection A of this section or subsection B of this section, unless the person is within one (1) year of discharge . . . .

Okla. Stat. tit. 57, § 332.7(A) & (D)(1) (Supp. 1998).

Tenth Circuit also found that Mr. Henderson had not shown that his circumstances had "changed sufficiently in light of his convictions and sentences to warrant an earlier parole consideration date" and that it was "only remote speculation to suggest that the application of the amended statute in Mr. Henderson's case [would] increase his punishment . . . ." *Id.* at 1217. Because Mr. Henderson had not shown that the amended statute would prolong his punishment either on the face of the statute or as applied to his circumstances, the court found that the statute did not violate the Ex Post Facto Clause. *Id.*

By Petitioner's own account, the Board has denied parole on the current sentence he is serving for his conviction of rape by instrumentation, which is categorized as a violent offense. *See* Okla. Stat. tit. 57, § 571(2)(bb). The Board again denied parole consideration on this sentence during the first stage of parole reconsideration in 2006. Petitioner cites no evidence to establish that it would be more likely that he would be granted parole if given an earlier parole hearing. Thus, Petitioner fails to allege facts demonstrating that changes in the Oklahoma parole statutes lengthening the time between parole reconsideration dates for violent offenders, as applied to him, violate the Ex Post Facto Clause. Rather, it appears that Petitioner may be relying "only on the speculation that the more often he is considered for parole, the higher his chances of release." *Berry v. Scafe*, No. 00-3366, 2001 WL 909120, at *3 (10th Cir. Aug. 13, 2001) (unpublished decision).[10] However, "[s]peculation and conjecture that the punishment will be increased by a change lengthening parole hearing

---

[10]This unpublished decision is cited as persuasive authority pursuant to Tenth Circuit Rule 32.1.

interval are insufficient to invoke the Ex Post Facto Clause." *Id.* (citing *Morales*, 514 U.S. at 509-10).

The undersigned finds that under these circumstances, the Board's action in extending Plaintiff's parole reconsideration to a three-year set off pursuant to § 332.7 as amended does not present "a sufficient risk that his effective punishment is more onerous under the new [Oklahoma] statute [and regulations]." *Raymer v. Enright*, 113 F.3d at 176. Accordingly, the undersigned finds that Petitioner has failed to show that he is entitled to habeas relief on his ex post facto claim.

RECOMMENDATION

For these reasons, it is the recommendation of the undersigned Magistrate Judge that pursuant to Rule 4, the petition for writ of habeas corpus be denied. Petitioner is advised of his right to object to this Report and Recommendation by the 20th day of May, 2008, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. The objections should be filed with the Clerk of this Court. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 30th day of April, 2008.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE